E. J. Eller was the owner in fee of a house and lot in the city of Greensboro, on North Edgeworth Street, which he occupied as a residence. He alleges "That there is a natural drain or ditch from Edgeworth Street, through said lot, in which the surface water naturally flows, and at the time of the purchase of said lot in September, 1922, there had been provided sufficient pipes to convey away the water then flowing through said lot, without injury thereto. That after that date the defendant has carelessly and negligently and without providing sufficient outlet therefor, and in disregard of the duty it owed the said plaintiffs in that behalf, collected in much greater than the natural quantity, surface water from various parts of the city of Greensboro, and has diverted the natural flow of said surface water, and drainage and has concentrated the said increased flow of water and drainage, in such manner as to discharge the same into said natural drain through said lot, without providing sufficient outlets for the same. That by reason of the said wrongful and negligent acts of defendant, the said lot has been flooded and the soil washed away, the cellar of the house of plaintiffs has been flooded and the wall undermined and said property has been thus and otherwise injured and damaged," etc.
In answer, the city of Greensboro admits "That there is or was a natural drain or ditch from Edgeworth Street through the lot referred to in the complaint, in which the surface water naturally flows, but it is denied that in September, 1922, after said ditch had been filled up by the owner of the said lot, sufficient pipes had been provided by the owner of the lot to carry away the water which drained onto the lot as the result of the natural formation of the land adjacent to said lot."
For further answer, defendant says, in part: "That the lot mentioned in the complaint is situated at the bottom of a natural water shed *Page 717 
extending from the top of the hill in Green Hill Cemetery on the north to the top of the hill between Humphrey Street and West Gaston Street on the south, and from a point between Edgeworth Street and Green Street on the east, westwardly to Buffalo Creek; that all the water that falls on the eastern end of this water shed naturally drains, and has always drained, into and through the lot mentioned in the complaint; that, prior to the paving of Edgeworth Street by the city of Greensboro, such water as fell on the eastern end of this natural water shed and drained into the said lot, was conveyed from Edgeworth Street by a ditch several feet wide and some four or five feet deep, leading across the said lot and other lots to the west thereof, and that said ditch emptied into a branch, which in turn emptied into Buffalo Creek; that said ditch was amply adequate to take care of and did take care of all the surface water that drained onto the said lot."
The defendant further alleges that "it laid pipes more than adequate to take care of any additional volume of water that might be, or has been discharged onto the said lot as the result of the paving of streets adjacent to Edgeworth Street, or as the result of any other act done or caused by the defendant; that the injuries alleged by plaintiffs in their complaint were directly and proximately and solely caused by their negligence in filling up the aforesaid ditch without providing a culvert or pipes sufficient in number and size to carry away the water naturally discharged on said lot, and by permitting one of the two pipes provided to become and remain stopped up; and defendant pleads such negligence on the part of plaintiffs as a complete bar to their recovery."
The issues submitted to the jury and the answers thereto were as follows:
"1. Has the plaintiffs' property been injured by the negligence of the defendant, city of Greensboro, as alleged in the complaint? Answer: Yes.
"2. What damage, if any, are the plaintiffs entitled to recover of the defendant? Answer: $1,300."
Judgment was rendered on the verdict. Defendant made numerous exceptions and assignments of error. These, with necessary facts, will be considered in the opinion.
We think only two main questions are involved in this case:
(1) The plaintiff contends that the duty defendant owed them — homeowners in the city of Greensboro — was not to carelessly and negligently *Page 718 
grade and pave its streets so as to collect and concentrate surface water greater than the natural quantity that flowed through their lot and discharge this increased and unnatural flow on their lot in such manner, mass and volume as to cause substantial injury to the same, without providing sufficient outlet. Defendant contends that it did not breach this duty.
(2) If defendant breached this duty, what is plaintiffs' measure of damage?
In Yowmans v. Hendersonville, 175 N.C. p. 577, it was held: "The right to change the grade of the streets and improve the same, according to modern and generally approved methods, passed to the municipality in the original dedication and may be exercised by the authorities as the good of the public may require. It is held in this jurisdiction, however, that the right referred to is not absolute, but is on condition that the same is exercised with proper skill and caution, and if, in a given case, or as it may affect the property of some abutting owner, there is a breach of duty in this respect, causing damage, the municipality may be held responsible. . . . (p. 578). It is very generally held here and elsewhere that while municipal authorities may pave and grade their streets and are not ordinarily liable for an increase of surface water naturally falling on the lands of a private owner, where the work is properly done, they are not allowed, from this or other cause, to concentrate and gather such waters into artificial drains and throw them on the lands of an individual owner in such manner and volume as to cause substantial injury to the same and without making adequate provision for its proper outflow, unless compensation is made, and for breach of duty in this respect an action will lie."
The defendant prayed the court below to give six special instructions. These instructions were all given, but modified by the court below. We only give the first instructions — necessary for the decision of this case: "If the jury shall find that the surface water from a certain section of the city of Greensboro naturally drained through the plaintiffs' lot, and if the jury shall find that the city of Greensboro in grading and paving its streets did not increase the area that naturally drained through plaintiffs' lot, but that such paving of the streets within this drainage area, by making the streets impervious to water and consequently preventing a portion of the water from soaking into the ground, did in this way increase the amount of water that drained through plaintiffs' lot, and that plaintiffs' lot was damaged by reason of such increase, then the court charges the jury that the city of Greensboro would not be liable for such damage unless such grading and paving were done in a careless and negligent manner, and the jury should *Page 719 
answer the first issue `No.'" Modified by the court, as follows: "Provided, however, gentlemen of the jury, in this connection the court calls your attention to the fact that while the defendant, the city of Greensboro, as a municipal corporation, may pave and grade its streets, and is not ordinarily liable for increase of surface water naturally falling on the lands of the plaintiffs where the work was properly done, if the plaintiffs have satisfied you by the greater weight of the evidence, that the defendant, city of Greensboro, in grading and paving its streets, diverted or concentrated and gathered surface water into artificial drains and threw it upon the lands of the individual owners in such manner and such volume as to cause substantial injury to said lands, and that the city of Greensboro failed to make adequate provision for its outflow, and that these facts were the proximate cause of the injury to the plaintiffs' lands, it would be your duty to answer the first issue `Yes.'"
"The defendant admits that there is evidence that when the natural watercourse overflowed, the excess water did, of course, run over part of plaintiffs' property. But the path followed by the overflow of water is not an artificial drain; for an artificial drain is a trench or ditch purposely dug or constructed for the specific purpose of conducting water along a certain route while the path followed by an overflow of water is simply the route which it naturally finds and follows when for some reason it is forced out of its original channel."
The pipes which the defendant placed under the street and the gutters and catch basins on Edgeworth Street, we construe to be artificial drains. The water flowed along, over and through these drains, the overflow discharging upon plaintiffs' property, so it would seem that they meet all the requirements of artificial drains. They were built by the defendant and were not "natural" drains. We cannot give to the word "artificial" the narrow construction as contended for by defendant.
In 13 R. C. L., 99, it is said: "Generally, when constructing, grading, or otherwise improving a street or highway, a municipal or quasi- municipal corporation is not obliged to protect the adjoining property by the construction of sewers and drains, or otherwise, from the natural flow of surface water therefrom . . . (sec. 102). The municipality orquasi-municipality must exercise reasonable care in the construction of sewers or other sufficient means of carrying off surface waters collected in drains or artificial watercourses, and is liable for injuries to adjoining lands resulting from its negligent failure to do so." Arndt v.Cullman, 132 Ala. 540; Valparaiso v. Spaeth, 166 Ind. 14; Farmville v.Wells, 127 Va. 528. *Page 720 
In McQuillan Municipal Corporations, vol. 6, it is said:
"2710. If a municipality is negligent in the construction or improvement of its streets, thereby causing injury from surface waters, the municipality is undoubtedly liable. As to just when a public improvement, such as grading a street, is negligently done, no rule can be laid down, although in some states the courts seem inclined to evade the rule of nonliability by ascribing the injury to negligence whenever there is a shadow of a reason for declaring the municipality negligent."
The city, having the power to grade, gutter and pave its streets, the actionable negligence extends where there has been substantial injury. The city can only be liable for negligence is not exercising skill and caution in the construction of its artificial drains and watercourses. It is bound to exercise ordinary care and prudence. If they are so constructed as to collect and concentrate surface water that such an unnatural flow in manner, volume and mass is turned and diverted onto the lower lot, so as to cause substantial injury, the city is liable. The decisions are in contrariety in other states, but we think this consonant with reason and justice and the accepted rule in this jurisdiction. The charge of the court below was within the rule of the decision in the Yowmans case, supra. Hinesv. Rocky Mount, 162 N.C. 409; Donnell v. Greensboro, 164 N.C. 330;Pennington v. Tarboro 184 N.C. p. 71. The municipality having certain ministerial or corporate duties, its liability is founded on negligence.Mabe v. Winston-Salem, ante, 486.
The defendant contends that the complaint does not allege that it collected surface water into artificial drains. This is true, but the inference, from the language of the complaint, shows this.
In determining similar rights against individuals or public-service corporations, the accepted rule is different — it is held that more water than would naturally flow cannot be diverted and put on the land of another causing damage. Yowmans case, supra, p. 577.
In Brown v. R. R., 165 N.C. p. 396, the Court said that "the higher owner cannot artificially increase the natural quantity of water or change its natural manner of flow by collecting it in a ditch and discharging it upon the servient land at a different place or in a different manner from its natural discharge." Barcliff v. R. R., 168 N.C. p. 270. Nor can sewerage. Finger v. Spinning Co., ante, 74.
The second proposition is the measure of damage. Plaintiff described the effect and result of the accumulated or diverted water on his lot, as follows: "It ponded the water up, backed up there into a pond. It washed my lot away. It flowed right across it, washed a big ditch down through it. The flow of water came across my lot, flowed across the street down through my lot and washed a ditch in there several times. *Page 721 
The ditch was about four or five feet deep, I guess, and that wide at the bottom — six or seven feet at the bottom and across the top. There was no ditch there before the city did this paving that I know of, only the natural drain where the pipes were through. The land was level there before. It backed up all the water, and the water flowed through under my house and undermined the foundation, let that down, and caused the plaster in the rooms of the house to crack by the foundation giving away. The foundation gave way on the back of the house, and the house gave down in the walls and cracked the ceiling and the plaster in several of the rooms. It was a brick underpinned house. The cellar was flooded with water. It looked like a fish pond. If a good rain came the overflow water stayed in there for a week. That situation was caused by mighty near an average rain."
We think as to damage, the principle applicable and the reason therefor is set forth in Hines v. Rocky Mount, supra, p. 412: "This general principle is subject to the limitation that neither a municipal corporation nor other governmental agency is allowed to establish and maintain a nuisance, causing appreciable damage to the property of a private owner, without being liable for it. To the extent of the damage done to such property, it is regarded and dealt with as a taking or appropriation of the property, and it is well understood that such an interference with the rights of ownership may not be made or authorized except on compensation first made pursuant to the law of the land. . . . In affording redress for wrongs of this character, injuries caused by a nuisance wrongfully created in the exercise of governmental functions, our decisions hold as the correct deduction from the above principle that the damages are confined to the diminished value of the property affected."
In trespass cases, as at bar, the measure of damages is the same. Ridleyv. R. R., 118 N.C. 996; Parker v. R. R., 119 N.C. 677; Caveness v. R.R., 172 N.C. 305; R. R. v. Nichols, 187 N.C. 153; Southerland on Damages, vol. 4 (4 ed.), sec. 1065.
The complaint did not ask for permanent damages, nor did defendant in its answer ask that permanent damages be assessed. Mitchell v. Ahoskie,ante, 235. The evidence showed that the damage was permanent and the case was tried out on the theory of permanent damage. Coble v. Barringer,171 N.C. 445; Cook v. Sink, ante, 621. We do not think there was prejudicial or reversible error.
From the whole record, we find
No error. *Page 722