WILLIAM THOMAS MITCHELL AND BRENDA L. MITCHELL AND DAVID LEE HOWELL AND JUDITH H. HOWELL v. CITY OF HIGH POINT, A MUNICIPAL CORPORATION

No. 7618SC176

(Filed 6 October 1976)

**Municipal Corporations § 20— flooding of creek during rainfall — creek not part of city drainage system**

> In an action to recover for damages to plaintiff's property caused by flooding during a rainstorm resulting from defendant's alleged negligence in failing to maintain its drainage system in good condition, the trial court erred in admitting evidence as to the condition of those portions of a creek bed located on private property and in instructing the jury that defendant had adopted the creek as part of its drainage system, since defendant did not "adopt" the stream by virtue of the fact that drainage from the defendant's streets entered the creek, there was no evidence that defendant augmented the flow in the creek to the point of overloading the stream or causing an overflow, and controlling and maintaining culverts at the intersection of two streets did not mean that defendant "adopted" the stream nor did it constitute a dedication of a private stream to public use.

APPEAL by defendant from *Walker, Judge.* Judgment entered 24 October 1975, Superior Court, GUILFORD County. Heard in the Court of Appeals 28 May 1976.

Plaintiffs alleged in their complaint that they owned property in the City of High Point which was flooded and heavily damaged during a rainstorm because of defendant's negligence in failing to maintain its drainage system in good condition.

Plaintiffs' evidence tended to show that a creek flows more or less north and south in the City of High Point, passing through culverts under Cedrow Drive and farther downstream through culverts under the Southern Railway. The two culverts under Cedrow Drive are maintained by defendant and are circular with a diameter of 80 inches. The two culverts under the railroad are maintained by the railroad and are rectangular, measuring about 30 by 50 inches at each end. Plaintiffs' homes are near the creek a short distance upstream from Cedrow Drive. On 17 July 1973 there was a heavy rainfall and water backed up behind the culverts at Cedrow Drive and flooded plaintiffs' homes. The water reached a level higher than Cedrow Drive, and it flowed over Cedrow Drive. After the flood waters

receded, it was found that there was a great deal of debris in and around the Cedrow Drive culverts and the railroad culverts. One of the Cedrow Drive culverts was partially obstructed with a large quantity of silt and sand. Before and after the flood the creek bed was overgrown with vegetation, and there were trees growing in the creek and sandbars that had accumulated in the creek bed. Prior to the flood, construction work was in progress on Manor Drive, a street located near the creek, and curbs and gutters were being installed.

Defendant offered evidence tending to show that the flood was caused by the extremely heavy volume of rainfall on 17 July 1973 and the inadequate size of the railroad culverts. After the flood waters had subsided there were cross-ties, leaves, limbs and logs found in the intake side of the two box culverts lying under the Southern Railway tracks.

The jury found that plaintiffs were injured as a result of defendant's negligence, and plaintiffs Mitchell were entitled to damages of $3,800 while plaintiffs Howell were entitled to damages of $1,000. Judgment was entered accordingly and defendant appealed.

*Floyd & Baker, by Walter W. Baker, Jr., for plaintiffs.*

*Henson & Donahue, by Daniel W. Donahue and Ronald G. Baker, for defendant.*

MARTIN, Judge.

By defendant's eighth argument it contends the court erred in admitting evidence as to the condition of those portions of the creek bed located on private property and in instructing the jury that defendant had adopted the creek as part of its drainage system. We think the assignment has merit.

It was stipulated and agreed by the parties that:

"(a) All the culverts, drainage ditches and stream beds lying between Orville Drive to the northwest and the Southern Railway track to the southeast were present when the area was annexed by the City of High Point in 1960.

(b) That all property lying along the drainage ditch or stream bed between Orville Drive and the Southern Railway tracks is privately owned with the exception of that por-

tion of the property which lies within the City of High Point's 30 foot right-of-way to each side of the center line of Cedrow Street.

(c) That the twin-pipe culvert located near the intersection of Cedrow Street and Manor Drive is controlled, inspected and maintained by the City of High Point and lies within the City's street right-of-way.

(d) That the double-barrel culvert lying under the Southern Railway tracks is controlled, inspected and maintained by the Southern Railway and lies within the railroad's 100 foot right-of-way.

(e) That William Thomas Mitchell and Brenda L. Mitchell are the owners or are in possession of certain real property located at 603 Manor Drive, High Point, Guilford County, North Carolina.

(f) That David Lee Howell and Judith H. Howell are the owners or are in possession of certain real property located at 703 Manor Drive, High Point, Guilford County, North Carolina."

Plaintiffs contend that defendant had "adopted" the natural waterway in question such that it had a duty to inspect and maintain it. They contend that by virtue of the fact that drainage from the defendant's streets entered the natural waterway in question, the defendant thereby "adopted" the stream. In *Eller v. Greensboro*, 190 N.C. 715, 718, 130 S.E. 851, 852 (1925) the Court quoted with approval the following language from *Yowmans v. Hendersonville*, 175 N.C. 575, 96 S.E. 45 (1918):

" 'The right to change the grade of the streets and improve the same, according to modern and generally approved methods, passed to the municipality in the original dedication and may be exercised by the authorities as the good of the public may require. It is held in this jurisdiction, however, that the right referred to is not absolute, but is on condition that the same is exercised with proper skill and caution, and if, in a given case, or as it may affect the property of some abutting owner, there is a breach of duty in this respect, causing damage, the municipality may be held responsible. . . . It is very generally held here and elsewhere that while municipal authorities may pave and

---
**Mitchell v. City of High Point**
---

grade their streets and are not ordinarily liable for an increase of surface water naturally falling on the lands of a private owner, where the work is properly done, they are not allowed, from this or other cause, to concentrate and gather such waters into artificial drains and throw them on the lands of an individual owner in such manner and volume as to cause substantial injury to the same.' . . ."

The Court in *Eller v. Greensboro, supra* at 720, 130 S.E. at 853 went on to say:

". . . The city can only be liable for negligence in not exercising skill and caution in the construction of its artificial drains and watercourses. It is bound to exercise ordinary care and prudence. If they are so constructed as to collect and concentrate surface water that such an unnatural flow in manner, volume and mass is turned and diverted onto the lower lot, so as to cause substantial injury, the city is liable."

There is no evidence that the City augmented the flow of water to the point of overloading the stream or causing an overflow.

Controlling and maintaining culverts at the intersection of Cedrow and Manor Drive does not mean that the City adopted the stream nor did it constitute a dedication of a private stream to public use.

In *Johnson v. Winston-Salem,* 239 N.C. 697, 707, 81 S.E. 2d 153, 160 (1954) it was stated that:

". . . [T]he general rule is that a municipality becomes responsible for maintenance, and liable for injuries resulting from a want of due care in respect to upkeep of drains and culverts constructed by third persons when, and only when, they are adopted as a part of its drainage system, or the municipality assumes control and management thereof. (Citations omitted.) Accordingly, there is no municipal responsibility for maintenance and upkeep of drains and culverts constructed by third persons for their own convenience and the better enjoyment of their property unless such facilities be accepted or controlled in some legal manner by the municipality. (Citations omitted.) . . . Moreover, the fact that a private line of drainage is connected with a municipal culvert under circumstances involving no

dedication by the private owner or control by the municipality, ordinarily does not make the latter liable for damages to private property caused by a break in the private line. (Citations omitted.)"

Except for those portions of the stream bed in the defendant's street right-of-way the plaintiffs have failed to show that the defendant exercised legal control and management of the stream bed or adopted it in any manner. That being so, the court erred in charging the jury that the defendant "adopted" the stream bed. Further, since the defendant had not adopted any portion of the stream and had no duty with respect to any of the stream bed which was not within its streets' rights-of-way, evidence of the condition of the stream bed outside of the right-of-way was inadmissible and the trial court committed error in admitting such evidence. The admission of incompetent evidence and the related portion of the charge constituted prejudicial error, necessitating a new trial.

Since the other challenged rulings may not recur on the retrial of the cause, we omit consideration of same.

New trial.

Judges VAUGHN and CLARK concur.