JOSEPH W. HOOPER, JR., AND WIFE, NELL T. HOOPER, PLAINTIFFS v. CITY OF WILMINGTON, NORTH CAROLINA, DEFENDANT

No. 785SC1085

(Filed 7 August 1979)

1. **Municipal Corporations § 20.2 — drainage ditch — adoption by city as part of drainage system**

    Evidence was sufficient to support the findings of the trial court that defendant city had adopted, managed and controlled an entire ditch, a portion of which ran by plaintiffs' land, where such evidence tended to show that the ditch was a part of the city's drainage system; the city controlled all drains and culverts above and below the plaintiffs' property in that drainage basin; other city owned ditches drained into the ditch in question above plaintiffs' property; the city director of public works admitted that the city "used" the entire ditch; a report of the city's drainage facilities indicated that the ditch was part of a lake drainage basin and referred to the ditch as a sub-basin; and city work crews had regularly snagged and worked the ditch above and below plaintiffs' property.

2. **Municipal Corporations § 20.2 — drainage ditch adopted by city — duty of due care imposed on city**

    Where a city adopts an open drainage ditch as part of its drainage system, it is under a duty to use due care in controlling the water in the ditch and is liable for erosion damage to private property proximately caused by its negligence.

3. **Municipal Corporations § 20.2 — drainage ditch — maintenance by city — negligence — sufficiency of evidence**

    Evidence was sufficient to support the trial court's finding of negligence by defendant city in its maintenance of a drainage ditch which bordered plaintiffs' property where such evidence tended to show that defendant received notice of an erosion problem as early as 1966; several studies were conducted by defendant to determine a means of preventing the erosion and several recommendations were made; and defendant took no steps to prevent the erosion.

4. **Municipal Corporations § 20.2 — drainage ditch — maintenance by city — negligence — proximate cause of erosion — sufficiency of evidence**

    In an action to recover damages for erosion of plaintiffs' property caused by the flow of water through a drainage ditch which bordered their property, evidence was sufficient to establish that the damage was proximately caused by defendant's negligence and not by increased runoff from the area due to land development where such evidence consisted of testimony by defendant's director of engineering and services and by a consulting engineer that the erosion was caused by the scouring action of the flow of water around the bend at plaintiffs' property; increased velocity of the water increased erosion; the velocity was controlled by the size of culverts and pipes; pipes placed

upstream could have increased the velocity of the water flowing in the ditch; the size of the pipe at the outfall behind plaintiffs' property could also increase the velocity of the water; the culvert above plaintiffs' property was not large enough adequately to control the flow of water; and installation of pipes below plaintiffs' property compounded the problem by increasing the velocity of the water flowing past plaintiffs' property.

APPEAL by defendant from *Rouse, Judge.* Judgment entered 24 March 1978 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 15 June 1979.

In 1955 the plaintiffs purchased a lot outside the city limits of Wilmington, North Carolina, and built a house on the lot in 1957. On the south and west sides of the lot was a drainage ditch known as Jumping Run Branch (hereinafter referred to as Branch). In 1964, the City of Wilmington annexed the lot. In 1972, plaintiffs filed a complaint alleging, *inter alia*, that beginning in 1965 the waters flowing through the Branch had eroded their lot; that the Branch was a part of the City's drainage system and that the City had diverted additional water into the Branch; that the City had been notified of the problem but had not taken any steps to halt the erosion; and that the City's acts constituted negligence, a continuing nuisance and a taking of plaintiffs' property. Plaintiffs sought $50,000 in damages.

The City filed an answer denying that the Branch was a part of the City water system, denying that the City had diverted additional water into the Branch, denying that the City had not cleaned the Branch or halted the erosion and denying that the damages amounted to $50,000. The defendant also pled the statute of limitations.

At trial without a jury by consent the plaintiffs called Robert F. Coleman, Jr., Director of Public Works of the City of Wilmington as an adverse witness. Coleman testified that he had worked for the City as an engineer for 31 years. His responsibilities included street drainage and maintenance, drainage system maintenance, refuse removal and watersheds. The street division was responsible for keeping the drainage systems functioning properly. Coleman admitted that the streets shown on Plaintiffs' Exhibit 15 were under the control of the City, including the culverts, manholes, and piping connected to the streets. Coleman

stated that the Branch was a part of the City drainage system in that water from Independence Boulevard located to the east of plaintiffs' house, as well as water from other streets in the watershed, was drained into the Branch which ran behind plaintiffs' property and flowed from there to the Cape Fear Country Club. The City maintained piping and culverts on the Branch above and below plaintiffs' property. Various ditches and drainage systems in the watershed, including the Branch, were in existence prior to annexation, and the City had accepted them by use or maintenance. Some drainage systems were dedicated to the City, but the Branch had not been. The City had, however, repaired a pipe which drained water into the Branch to the rear of plaintiffs' property. That pipe had originally been installed by a developer. The City had also maintained the areas where the Branch intersected with city streets and had installed culverts, pipes and pavement. Work of this nature had been performed on the Branch where it crossed streets above and below plaintiffs' property. Coleman admitted that the City had a duty to keep the flow of water between city streets unimpeded. Coleman had visited plaintiffs' property beginning in 1966 and other city officials also visited the site. The City prepared a list of recommendations for correcting the erosion including such remedies as piping the ditch or placing sandbags or cement rip-rap on the slopes. Coleman testified that the City had taken none of these steps because it would require permanent rights-of-way from landowners along the Branch. Coleman stated that the culverts were too far upstream to have affected the velocity of the water in the Branch and stated that the City had not diverted any water into the Branch.

Plaintiffs also presented a study of the city drainage system, conducted by the firm of Hazen and Sawyer, which showed that the drainage system above plaintiffs' property was inadequate to control flooding and that correcting the deficiency would reduce the velocity of the flow of water where it passed through an enlarged structure such as a culvert. Velocity of the water would contribute to erosion. The report suggested diverting the flow of water to a pipeline down Gillette Drive and closing the Branch.

Plaintiffs also called Norman Tyson, Superintendent of Streets for the City of Wilmington, as an adverse witness. Tyson testified that he was responsible for cleaning streets and drainage systems. His crews cleaned and maintained the Branch below

plaintiffs' lot on a regular basis, as well as other areas of the Branch. His crews had repaired the outfall pipe from Brookhaven Road which was behind plaintiffs' lot, had run draglines down the Branch since 1975 and had cleared the Branch above the plaintiffs' lot since 1969. Tyson testified that the grid map which he used to schedule his work crews included the Branch.

James Ward Andrews, Director of Engineering and Services for the City of Wilmington also called as an adverse witness by plaintiffs, testified that in 1972 he had been asked by the City Manager of Wilmington to investigate methods for correcting the erosion problem behind plaintiffs' lot on the Branch. All of the methods for correcting the problem required dedication of a right-of-way to the Branch to the City.

Dr. Hooper testified that the Branch had grown from a small creek which one could step over, to a width of 40 feet in some places. The pipe from Brookhaven Drive, located on the bank opposite plaintiffs' lot, continuously discharged water at right angles to the Branch, and had washed away the bank on plaintiffs' lot. Plaintiffs' property had eroded as much as 20 feet, and the water had washed away plants and shrubbery as well as a dog run.

Dr. Hooper testified that 75% of the erosion had occurred since 1969. His property was worth $160,000 in 1964, $190,000 in 1969, and $200,000 at trial. Without erosion it would have been worth $205,000 in 1969 and worth $250,000 at the time of trial.

John D. Grady, Jr., a consulting engineer, testified that the natural drainage had altered since 1964 and the flow of water through the Branch had increased. The culvert above plaintiffs' property was too small and increased the velocity of the water. The Brookhaven Drive outfall altered the drainage pattern and created erosion.

Defendant's evidence tended to show that the increase of residences constructed in the area had increased the flow of water.

The court entered judgment finding in substance that the City had adopted the Branch as a part of its drainage system, had performed work along the Branch, had exercised control and management of the Branch, and that the City had been notified of

the erosion but had negligently failed to correct the problem. The court awarded plaintiffs $20,000 in damages for erosion occurring within the three years immediately preceding the institution of the suit.

*Marshall, Williams, Gorham & Brawley by A. Dumay Gorham, Jr. and Daniel Lee Brawley for plaintiff appellees.*

*John C. Wessell and Crossley & Johnson by Robert White Johnson for defendant appellant.*

CLARK, Judge.

[1] Defendant first assigns as error the court's finding of fact that the defendant had adopted, controlled and maintained Jumping Run Branch, since there was no evidence tending to show that the Branch had been dedicated to the City and evidence that the City adopted and controlled the Branch where it intersected with city streets does not constitute an adoption of the entire Branch.

> "[T]he general rule is that a municipality becomes responsible for maintenance, and liable for injuries resulting from a want of due care in respect to upkeep, of drains and culverts constructed by third persons when, and only when, they are adopted as a part of its drainage system, or the municipality assumes control and management thereof. (Citations omitted.) Accordingly, there is no municipal responsibility for maintenance and upkeep of drains and culverts constructed by third persons for their own convenience and the better enjoyment of their property unless such facilities be accepted or controlled in some legal manner by the municipality. . . ."

*Johnson v. Winston-Salem*, 239 N.C. 697, 707, 81 S.E. 2d 153, 160 (1954). 63 C.J.S. *Municipal Corporations* § 877 (1950). In *Mitchell v. City of High Point*, 31 N.C. App. 71, 228 S.E. 2d 634 (1976), this Court held that evidence that the City controlled a culvert downstream from plaintiffs' property "does not mean that the City adopted the stream nor did it constitute a dedication of a private stream to public use." 31 N.C. App. at 74, 228 S.E. 2d at 636. In the case *sub judice*, however, there is considerably more evidence of control over the entire stream than was present in *Mitchell*. Mr. Coleman testified that the Branch was a part of the City's drainage system. The city controlled all drains and culverts

above and below the plaintiffs' property in that drainage basin. Other city owned ditches drained into the Branch above plaintiffs' property. Coleman admitted that the City "used" the entire branch. Plaintiffs' Exhibit No. 30, a 1975 report of the City's drainage facilities prepared by Hazen and Sawyer, indicates that the Branch was part of the Greenfield Lake Drainage Basin. The report refers to the Branch as a sub-basin. In addition, Tyson testified that city work crews had regularly snagged and worked the Branch above and below plaintiffs' property. After a careful review of the record and plaintiffs' exhibits, we hold that there is ample evidence to support the findings of the trial court that the city had adopted, managed and controlled the entire Branch.

[2] Defendant also contends that the court erred in concluding as a matter of law that the City had a duty to exercise due care and failed to do so. Defendant contends that a municipality is only held liable for private damage in instances of culvert failure, for blockage causing water to back up, or for diversion of water onto private property. This contention is without merit. Assuming that a municipality has adopted an open drainage ditch as part of its drainage system "it may become liable for injury caused by its negligence in the control of the water. Where a city adopts a natural water course for sewage or drainage purposes, it has the duty to keep it in proper condition and free from obstructions, and it is liable for damage resulting therefrom." *Milner Hotels, Inc. v. Raleigh*, 268 N.C. 535, 151 S.E. 2d 35 (1966). Since we have affirmed the trial court's conclusion that the City adopted the entire branch, we conclude that the defendant had a duty to use due care in controlling the water in the Branch and is liable for erosion damage to private property proximately caused by the negligence of the municipality.

[3] Defendant also contends that there is no evidence to support the court's finding of negligence. The evidence tends to show that the City received notice of the erosion problem as early as 1966. Several studies were conducted by the City to determine a means of preventing the erosion and several recommendations were made. The City, however, took no steps to prevent the erosion. This evidence is sufficient to support the court's finding of negligence.

[4]    Defendant further argues that there is insufficient evidence to establish that the damage was proximately caused by defendant's negligence. Defendant contends that increased runoff from the area due to land development caused the erosion to plaintiffs' property.

On appeal, the court's findings of fact are conclusive if supported by any competent evidence, and a judgment supported by such findings will be affirmed even though there is evidence *contra. Cogdill v. North Carolina State Highway Commission*, 279 N.C. 313, 182 S.E. 2d 373 (1971); *Fast v. Gulley*, 271 N.C. 208, 155 S.E. 2d 507 (1967). 1 Strong's N.C. Index 3d *Appeal and Error* § 57.2 (1976). Plaintiffs presented Mr. Andrews, Director of Engineering and Services for the City of Wilmington, called as an adverse witness, who testified that the erosion was caused by the scouring action of the flow of water around the bend at plaintiffs' property, and that increased velocity of the water increased erosion, and the velocity is controlled by the size of culverts and pipes. Pipes placed upstream could have increased the velocity of the water flowing in the Branch and the size of the pipe at the outfall behind plaintiffs' property could also increase the velocity of the water. John D. Grady, a consulting engineer, testified that the natural drainage in the Branch had changed since 1964. The culvert above plaintiffs' property was not large enough to adequately control the flow of water. Installation of pipes at Gillette Drive located below plaintiffs' property compounded the problem by increasing the velocity of the water flowing past the plaintiffs' property. The Brookhaven Drive outfall pipe altered the natural drainage pattern and contributed to the erosion. The plaintiffs presented sufficient evidence to support the court's findings that the City's negligence had proximately caused the erosion damage to plaintiffs' property. Defendant's assignment of error is overruled.

We have carefully examined and considered defendant's other assignments of error, which relate primarily to evidentiary matters in light of the rule that the findings by the court are conclusive if supported by any competent evidence. We find no prejudicial error.

The judgment is fully supported by findings of fact and conclusions of law, and the same is

Affirmed.

Judges MITCHELL and ERWIN concur.