FIRST GASTON BANK OF NORTH CAROLINA, Plaintiff v. CITY OF HICKORY, VERNA
AND ASSOCIATES, INC., VERNA ENGINEERING, P.C., and PETER J. VERNA,
JR., Defendants

No. COA08-1017

(Filed 6 April 2010)

**1. Civil Procedure— depositions—non-party witnesses—
other lawsuits—summary judgment**

Defendant City of Hickory's challenge to plaintiff's reliance
on depositions of non-party witnesses taken in other lawsuits to
support the factual assertions at summary judgment and in its
appellate brief was overruled. Rule 56(c) of the Rules of Civil
Procedure does not limit depositions to those taken in the case in
which the motion for summary judgment is pending and deposi-
tions that meet the requirements of an affidavit may be used in
summary judgment proceedings.

**2. Appeal and Error— hearsay—issue not preserved**

Defendant City of Hickory's challenge on hearsay grounds to
several documents in the record was not properly preserved for
appellate review.

**3. Real Property— inverse condemnation—summary judg-
ment proper**

The trial court properly granted summary judgment in fa-
vor of defendant City of Hickory on plaintiffs inverse condemna-
tion claim because plaintiff failed to show that the flooding of
plaintiff's storm drain pipe was a direct result of a government
structure.

**4. Negligence— insufficient evidence of a duty—summary
judgment**

The trial court did not err in granting summary judgment in
favor of defendant City of Hickory on plaintiff's negligence claim
because plaintiff failed to offer sufficient evidence that defendant
owed plaintiff any duty to inspect or maintain a storm drainage
pipe on plaintiff's property.

Appeal by plaintiff from order entered 21 December 2007 by
Judge F. Donald Bridges in Catawba County Superior Court. Heard in
the Court of Appeals 12 February 2009. Opinion filed 7 April 2009.
Motion to amend record on appeal and withdraw opinion granted 24

April 2009. The following opinion supersedes and replaces the opinion filed 7 April 2009.

*Smith, Cooksey & Vickstrom, PLLC, by Neil C. Cooksey and Steven L. Smith, for plaintiff-appellant.*

*Cranfill Sumner & Hartzog, LLP, by Patrick H. Flanagan and Amy E. Fitzgerald, for defendant-appellee City of Hickory.*

GEER, Judge.

This appeal arises out of litigation relating to a sinkhole that developed in 2005 when a storm drain collapsed on property owned by plaintiff First Gaston Bank of North Carolina ("First Gaston") in Hickory, North Carolina. First Gaston appeals from the trial court's entry of summary judgment in favor of the City of Hickory on First Gaston's claims for negligence and inverse condemnation relating to the storm drain collapse. We hold that the trial court properly granted summary judgment on both claims. With respect to the negligence cause of action, First Gaston has failed to establish that the City owed any duty to the private property owner in connection with the drain. Further, no claim for inverse condemnation exists because First Gaston cannot demonstrate that the damage to its property was the direct result of a structure built by the City. There was, therefore, no taking.

Facts

In 2000, First Gaston financed the purchase of property in Hickory, North Carolina by SCA Morris, Inc. ("SCA Morris"). Diagonally crossing the property is an underground 96-inch in diameter storm drain made of corrugated metal. This pipe immediately connects upstream to an underground box culvert built in 1954 or 1955 by the Department of Transportation ("DOT") underneath Highway 70. The pipe connects downstream with a pipe maintained by the City that runs under 7th Street, a street built by Home Depot and dedicated to the City in the 1990s.

In 2001, SCA Morris built a restaurant on the property. On 17 August 2002, during a heavy rainstorm, the storm drain crossing the property failed, and a large sinkhole developed. After obtaining an additional loan from First Gaston, SCA Morris retained Peter J. Verna, Verna Engineering P.C., and Verna and Associates, Inc. ("the Verna defendants") to make the needed repairs on the property. In order to complete the project, the Verna defendants obtained building, plumb-

ing, electrical, and mechanical permits from the City. The repairs were finished in April 2003, and after the City inspected the property and certified it safe for occupancy, the restaurant reopened in July 2003.

In May 2004, the restaurant closed, and SCA Morris defaulted on its loans. First Gaston foreclosed on the property in September 2004. On 7 July 2005, a second sinkhole developed on the property due to a second failure of the storm drain. Shortly before the occurrence of the 2005 sinkhole, First Gaston had received an offer to purchase the property for $1,200,000.00. After the 2005 sinkhole appeared, First Gaston sold the property for $1.00.

On 24 May 2006, First Gaston brought an action against the City in Catawba County Superior Court, asserting a claim for negligence. On the same date, First Gaston filed a separate lawsuit against the Verna defendants. On 17 July 2006, First Gaston filed an amended complaint in the action against the City, adding a claim for inverse condemnation. The City filed an amended answer on 6 August 2007 that included cross-claims against the Verna defendants. On 10 May 2007, the trial court, with the consent of all parties, ordered the consolidation of the action against the City and the action against the Verna defendants.

The City filed a motion for summary judgment on 18 October 2007. On 21 December 2007, the trial court entered an order granting summary judgment to the City. First Gaston filed notice of appeal on 17 January 2008. The record on appeal, as filed in this Court, contained no indication that the claims against the Verna defendants had been resolved. Consequently, on 7 April 2009, this Court dismissed the appeal as interlocutory because the trial court's summary judgment order as to the City had not been certified for interlocutory appeal under Rule 54(b) of the Rules of Civil Procedure, and First Gaston had made no argument as to the existence of a substantial right that would be lost without immediate review.

On 23 April 2009, First Gaston filed a motion to amend the record on appeal to reflect that the claims against the Verna defendants were not pending, and the order granting summary judgment for the City was in fact a final judgment. The amendments to the record on appeal show that on the same day the trial court granted summary judgment for the City, the trial court also, in a separate order, entered summary judgment in favor of the Verna defendants. On 24 April 2009, this Court entered an order allowing First Gaston's motion to amend the

record on appeal to include the trial court's order granting summary judgment to the Verna defendants and withdrawing the opinion dismissing the appeal.

"It is the duty of the appellant to ensure that the record is complete." *Hicks v. Alford*, 156 N.C. App. 384, 389, 576 S.E.2d 410, 414 (2003). Rule 9(a)(1)(j) of the Rules of Appellate Procedure requires that the record on appeal in civil actions contain "copies of all other papers filed and statements of all other proceedings had in the trial court which are necessary to an understanding of all errors assigned unless they appear in the verbatim transcript of proceedings . . . ." Despite First Gaston's violation of this rule, we decline to impose sanctions, and we choose to review the merits of the appeal.

I

[1] As a preliminary matter, we must address the City's challenge to First Gaston's use of certain evidence to support the factual assertions in its appellate brief. The City first contends that First Gaston, in opposing summary judgment, improperly relied upon the depositions of four non-party witnesses that were taken in two other lawsuits. The City contends that because the depositions were not taken in this action, "[t]he depositions are not part of the forecast of evidence in this matter, nor are there any provisions allowing them to be used as such in the North Carolina Rules of Civil Procedure." The City cites no authority in support of this assertion.

Rule 56(c) of the Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Rule 56(e) further provides that "[t]he court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits." Neither subsection of Rule 56 expressly limits "depositions" to those taken in the case in which the motion for summary judgment is pending, so long as the deposition is "on file" in the pending action.

Although not cited by the City, Rule 32(a) of the Rules of Civil Procedure does limit the use of depositions to use "against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof" and to specified circumstances. Nevertheless, leading commentators and the better-reasoned opinions addressing the essentially identical federal Rule 32(a) have con-

cluded that this rule does not apply to hearings in which affidavits may be submitted, such as summary judgment proceedings under Rule 56.

In discussing Fed. R. Civ. Proc. 32(a), the leading commentator on the Federal Rules of Civil Procedure has explained that "depositions can be used more freely on motions than the rule would seem to indicate," specifically pointing to Rule 56(c). 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Fed. Prac. & Proc. Civ.* § 2142 (2d ed. 1994). The treatise then explains: "A deposition is at least as good as an affidavit and should be usable whenever an affidavit would be permissible, even though the conditions of the rule on use of a deposition at trial are not satisfied." *Id.*

The Ninth Circuit has similarly held:

> Sworn deposition testimony may be used by or against a party on summary judgment regardless of whether the testimony was taken in a separate proceeding. Such testimony is considered to be an affidavit pursuant to Federal Rule of Civil Procedure 56(c), and may be used against a party on summary judgment as long as the proffered depositions were made on personal knowledge and set forth facts that were admissible in evidence.

*Gulf USA Corp. v. Federal Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir. 2001) (internal citations omitted). *See also Tingey v. Radionics*, 193 Fed. Appx. 747, 765, 2006 WL 2258872, *15 (10th Cir. 2006) (unpublished) (holding that trial court should not have struck under Rule 32(a) deposition taken in separate action because depositions may be treated as affidavits in summary judgment proceedings); *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765, 767-68 (8th Cir. 1992) (noting that "[t]he Federal Rules specifically allow depositions to be used in opposition to motions for summary judgment" and holding deposition may be used as affidavit in summary judgment proceeding); *Burbank v. Davis*, 227 F. Supp. 2d 176, 179 (D. Me. 2002) (holding that depositions from other actions are admissible in connection with motion for summary judgment as "sworn statements"); *Tormo v. Yormark*, 398 F. Supp. 1159, 1168-69 (D.N.J. 1975) ("Despite this language [in Rule 32], however, courts and commentators have rejected the notion that the rule governs the use of deposition testimony at a hearing or a proceeding at which evidence in affidavit form is admissible. The reasoning behind this rejection is that deposition testimony taken under oath, even if failing to satisfy Rule 32(a)'s requirements, is at least as good as affidavits." (internal citations and quotation marks omitted));

*Hastings Mut. Ins. Co. v. Halatek*, 174 Ohio App. 3d 252, 257-58, 881 N.E.2d 897, 901-02 (2007) (holding that deposition from another case is as good as affidavit and, therefore, could be considered on summary judgment).

We find the above reasoning persuasive and hold that depositions, if they meet the requirements of an affidavit, may be used in summary judgment proceedings even if the party against whom the deposition is used was not present or represented at the taking of the deposition. The City objects, however, that it did not have an opportunity to cross-examine one of the witnesses.[1] As the Tenth Circuit has pointed out, the same objection can frequently be made as to affidavits filed in connection with motions for summary judgment:

> Parties may file affidavits in support of summary judgment without providing notice or an opportunity to cross-examine the affiant. *See* Fed.R.Civ.P. 56(c). The "remedy" for this non-confronted affidavit testimony is to file an opposing affidavit, not to complain that one was not present and permitted to cross-examine when the affidavit was signed. . . . If [defendant] wished to controvert [the] testimony [of the witness in another action] for summary judgment purposes, it could either have noticed an additional deposition of [the witness], or presented additional testimony from its own expert to cast doubt on his conclusions. Therefore, the district court should not have struck [the witness'] deposition under Rule 32(a).

*Tingey*, 193 Fed. Appx. at 765-66, 2006 WL 2258872 at *16.

In this case, the deponents were sworn, and the City has made no showing that the depositions fail to meet the requirements for affidavits set out in Rule 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). We, therefore, hold that the depositions were properly submitted to and considered by the trial court and will also consider them.[2]

---

1. The City cites *Investors Title Ins. Co. v. Herzig*, 330 N.C. 681, 691, 413 S.E.2d 268, 273 (1992), but that case addressed the admissibility of a deposition at trial under N.C.R. Evid. 804(b)(1) and not the use of depositions in connection with motions for summary judgment.

2. We note that the City has not suggested that any of the witnesses would be unavailable to testify at trial. Thus, just as an affidavit forecasts testimony intended to be presented at trial, so too the depositions at issue are forecasts of testimony First Gaston expects to elicit at trial.

**FIRST GASTON BANK OF N.C. v. CITY OF HICKORY**

[203 N.C. App. 195 (2010)]

**[2]** The City also challenges several documents in the record as inadmissible hearsay: (1) a letter from the Mayor of Hickory to a DOT Board member expressing concern over the DOT's decision to allow First Gaston to proceed with private repairs; (2) a series of e-mails and photographs from DOT officer Mark Leatherman; and (3) a letter from Assistant Attorney General Donald Teeter sent to SCA Morris on behalf of the DOT asking it to address several conditions on the property. The record does not, however, reveal that the City specifically objected at the trial level to consideration of these exhibits or, if any objection was made, that the trial court ruled upon that objection. The City is, therefore, precluded from challenging these exhibits for the first time before this Court. *See* N.C.R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion.").

## II

**[3]** Turning to the merits, we first address First Gaston's inverse condemnation or "taking" claim. A taking is defined as " 'entering upon private property for more than a momentary period, and under warrant or color of legal authority, devoting it to a public use, or otherwise informally appropriating or injuriously affecting it in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof.' " *Long v. City of Charlotte*, 306 N.C. 187, 199, 293 S.E.2d 101, 109 (1982) (quoting *Penn v. Coastal Corp.*, 231 N.C. 481, 484, 57 S.E.2d 817, 819 (1950)).

First Gaston argues that its claim falls within *Midgett v. N.C. State Highway Comm'n*, 260 N.C. 241, 243, 132 S.E.2d 599, 603 (1963), *overruled in part on other grounds by Lea Co. v. N.C. Bd. of Transp.*, 308 N.C. 603, 304 S.E.2d 164 (1983). In *Midgett*, the plaintiff alleged that the State Highway Commission's construction of a highway that diverted ocean flood water onto his property was a taking. The Supreme Court agreed, explaining that "if a governmental agency maintains a nuisance, permanent in nature, causing damage to and diminution in the value of land, the nuisance is regarded and dealt with as an appropriation of property to the extent of the injury inflicted." *Id.* at 247-48, 132 S.E.2d at 606. The Court reasoned: "The right to have water flow in the direction provided by nature is a property right, and if such right of a landowner is materially interfered

with so that his land is flooded by the manner in which a highway is constructed, it is a nuisance and a taking of property for public use for which compensation must be paid." *Id.* at 248, 132 S.E.2d at 606.

The Court explained further, however:

> In order to create an enforceable liability against the government it is, at least, necessary that the overflow of water be such as was reasonably to have been anticipated by the government, *to be the direct result of the structure established and maintained by the government,* and constitute an actual permanent invasion of the land, or a right appurtenant thereto, amounting to an appropriation of and not merely an injury to the property. To constitute a permanent invasion of property rights and an impairment of the value thereof the obstruction or structure need not be permanent in fact, but it must be permanent in nature. A permanent structure is one which may not be readily altered at reasonable expense so as to remedy its harmful effect, or one of a durable character evidently intended to last indefinitely and costing practically as much to alter or remove as to build in the first place. A segment of an improved highway is a structure of permanent nature.

*Id.*, 132 S.E.2d at 607 (emphasis added) (internal citations omitted). The Supreme Court in *Lea Co.*, 308 N.C. at 614, 304 S.E.2d at 172, emphasized that this aspect of *Midgett* means that a plaintiff with an inverse condemnation claim based on flooding must show that "the increased overflow of water was such as was reasonably to have been anticipated by the State to be the direct result of the structures it built and maintained."

First Gaston contends that the City's "reckless" approval of development upstream from the subject pipe was a taking because it concentrated unreasonable amounts of storm water into the First Gaston pipe, which caused it to fail, thereby resulting in the 2005 sinkhole. In *Lea Co.*, 308 N.C. at 617, 304 S.E.2d at 174, however, the Supreme Court stressed:

> Injury properly may be found to be a foreseeable direct result of government structures when it is shown that the increased flooding causing the injury would have been the natural result of the structures *at the time their construction was undertaken.* Injury caused in substantial part by subsequent or contemporaneous acts or construction by others is not a direct result of the government structures. A showing of injury caused by such subse-

quent or contemporaneous acts or construction will not support a finding that there has been a taking by the State. To require the State to anticipate the shifting of business and population centers and the attendant acts or construction by others contemporaneous with or subsequent to the State's construction, and to hold the State liable for a taking if it fails to do so, would place an unreasonable and unjust burden upon public funds. No such result is required by the Constitution of the United States or the Constitution of North Carolina.

Thus, for a taking to occur, the government must have constructed a permanent structure that caused the damage to the plaintiff's property.

In *Midgett*, the government-built highway was the structure that subjected the plaintiff's land to the nuisance. In *Lea Co.*, the government-built highway improvements were the structures that subjected the plaintiff's land to flooding. Here, there is no contention that a project built and maintained by the government caused the pipe to overflow. First Gaston has, therefore, failed to meet the first prerequisite of *Midgett* and *Lea Co.* for establishment of the existence of a taking: that the flooding of the First Gaston pipe was a direct result of a government structure.

Therefore, the trial court properly granted summary judgment on the inverse condemnation claim. *See also State ex rel. City of Blue Springs v. Nixon*, 250 S.W.3d 365, 371 (Mo. 2008) (rejecting plaintiffs' claim for inverse condemnation based on City's approval of private development plans that failed to adequately account for increased storm water created by development because it was private developer's improvements to land that caused plaintiffs' damages); *Phillips v. King County*, 136 Wash. 2d 946, 960-61, 968 P.2d 871, 878 (1998) (accord). Because of our resolution of this issue, it is unnecessary to discuss the parties' arguments as to the other elements of a taking claim.

### III

[4] With respect to First Gaston's negligence claim, it is well established that "[i]n order to survive a defendant's motion for summary judgment in a negligence action, a plaintiff must set forth a prima facie case '(1) that defendant failed to exercise proper care in the performance of a duty owed plaintiff; (2) the negligent breach of that duty was a proximate cause of plaintiff's injury; and (3) a person of ordinary prudence should have foreseen that plaintiff's injury was

probable under the circumstances.' " *Strickland v. Doe*, 156 N.C. App. 292, 294, 577 S.E.2d 124, 128 (quoting *Lavelle v. Schultz*, 120 N.C. App. 857, 859-60, 463 S.E.2d 567, 569 (1995), *disc. review denied*, 342 N.C. 656, 467 S.E.2d 715 (1996)), *disc. review denied*, 357 N.C. 169, 581 S.E.2d 447 (2003). "While summary judgment is normally not appropriate in negligence actions, where the forecast of evidence shows that a plaintiff cannot establish one of these required elements, summary judgment is appropriate." *Id.* The parties primarily dispute the existence of a duty of care owed by the City to First Gaston.

A. Duty to Inspect and Maintain First Gaston Pipe Based on Control of Other Storm Water Management Pipes

First Gaston's first theory of negligence is that the City is liable for the damage resulting from the failure of the privately-constructed storm drain pipe on First Gaston's property because of the City's maintenance and control of the City's storm drain system. The general rule in this State is that "there is no municipal responsibility for maintenance and upkeep of drains and culverts constructed by third persons for their own convenience and the better enjoyment of their property unless such facilities be accepted or controlled in some legal manner by the municipality." *Johnson v. City of Winston-Salem*, 239 N.C. 697, 707, 81 S.E.2d 153, 160 (1954).

First Gaston argues that this test is met because the City controls portions of the storm water management pipes above and below the pipe crossing First Gaston's private property. According to First Gaston, the City, therefore, adopted the First Gaston pipe and can be held liable for damage stemming from the pipe's failure. This Court recently rejected a similar claim in *Asheville Sports Props., LLC v. City of Asheville*, 199 N.C. App. 341, 683 S.E.2d 217 (2009).

In *Asheville Sports*, the plaintiffs contended that the City of Asheville adopted the storm water drainage pipes on their private property "by using them 'as integral components of [its] municipal storm water runoff control and drainage system[.]' " *Id.* at 346, 683 S.E.2d at 220. Like First Gaston, the *Asheville Sports* plaintiffs relied heavily on *Hooper v. City of Wilmington*, 42 N.C. App. 548, 553, 257 S.E.2d 142, 145, *disc. review denied*, 298 N.C. 568, 261 S.E.2d 122 (1979), in which this Court held that the City could be held liable for negligent maintenance of a ditch on private property. This Court distinguished *Hooper*, noting that the plaintiffs' pipes in *Asheville Sports* were not immediately connected with the City's pipes, but rather

were connected to other private parties' pipes. 199 N.C. App. at 351, 683 S.E.2d at 223. We held that the plaintiffs' proffer of a map showing that at some point, water from the plaintiffs' pipe ran through other pipes owned by the City was insufficient to create an issue of fact as to whether the City had adopted the plaintiffs' pipes. *Id.*

First Gaston has cited nothing in the record other than evidence (1) that the City controls a portion of pipe further upstream, but not immediately adjacent to, the pipe on its property and (2) that, after running through the First Gaston pipe, storm water runoff flows into a pipe owned and maintained by the City. This is not sufficient evidence to create an issue of fact as to whether the City adopted the First Gaston pipe. *See also Mitchell v. City of High Point*, 31 N.C. App. 71, 75, 228 S.E.2d 634, 637 (1976) (holding that City's control and maintenance of two culverts upstream from plaintiffs' property did not mean that City had adopted entire stream).

Alternatively, First Gaston contends the City's oversight of the repairs on the First Gaston property following the 2002 sinkhole constituted adoption of the subject pipe and gave rise to a duty to inspect, repair, and maintain it. First Gaston points to the fact that City officials required (1) SCA Morris to locate the building 30 feet off the right of way, (2) to refrain from using the storm drain to dispose of water from their own property, (3) to build a separate storm drainage system for the property, and (4) to submit plans and specifications to and obtain approval from the City for all of the foregoing. According to First Gaston, "[s]uch control over the property itself justifies imposition of the *Milner Hotels* duty."

In *Milner Hotels, Inc. v. City of Raleigh*, 268 N.C. 535, 537, 151 S.E.2d 35, 37-38 (1966), *modified on reh'g*, 271 N.C. 224, 155 S.E.2d 543 (1967), the Supreme Court held that the City could be held liable when a stream used by the City of Raleigh to drain storm water backed up due to debris in a culvert maintained by the City and flooded the plaintiff's property. The Supreme Court based its holding on allegations that the City had contracted with the State to maintain, inspect, and repair the culverts in the City and had, in fact, performed the promised maintenance. *Id.* Nowhere in *Milner Hotels* did the Court hold that a City's inspection of a private party's construction activities on private property gives rise to a duty by the City generally to inspect, maintain, and repair waterways and drainage systems on that property. *Milner Hotels* did not hold, and First Gaston cites no other case holding, that a City adopts a private storm drain pipe and

consequently undertakes a duty to maintain and repair that pipe simply by examining repairs made by the private property owner.[3]

Finally, First Gaston argues that a duty regarding the First Gaston pipe arose from the City's "exercis[ing] considerable dominion and control over development upstream from the [First Gaston] Property." First Gaston presented evidence that upstream development authorized by the City "substantially increased the volume of water in the storm drain under the Property causing the [First Gaston storm drain] to surcharge, pressurizing the pipe." First Gaston asserts that "[t]he City of Hickory cannot approve major commercialization of upstream property without considering the impact of the increased water flow on the downstream owners affected by the storm drain."

As its sole support for this argument, First Gaston relies on *Yowmans v. City of Hendersonville*, 175 N.C. 575, 577, 96 S.E. 45, 46 (1918), in which the trial court held the City liable for grading and paving its streets in such a way as to divert large quantities of water onto the plaintiff's lot, causing her drainage pipes to burst and flood her property. On appeal, the Supreme Court began by explaining that

> it is very generally held here and elsewhere that while municipal authorities may pave and grade their streets and are not ordinarily liable for an increase of surface water naturally falling on the lands of a private owner, where the work is properly done, they are not allowed, from this or other cause, to concentrate and gather such waters into artificial drains and throw them on the lands of an individual owner in such manner and volume as to cause substantial injury to the same and without making adequate provision for its proper outflow, unless compensation is made, and for breach of duty in this respect an action will lie.

*Id.* at 578, 96 S.E. at 47.

The Court explained further that the question of the City's liability turned on "whether [the City] ha[d] wrongfully turned its surface water on plaintiff's property, causing damage to same as alleged." *Id.* Phrased differently, "the question of defendant's responsibility should be made to depend chiefly on whether, having gathered and concen-

---

3. We note that the City has expressly declined to assume the duty asserted by First Gaston. Section 13.20.7 of the City's Land Development Code states: "If the City assists or has assisted private owners with the design, supply and/or installation of storm water management facilities, this does not imply any maintenance responsibilities by the City. The maintenance of all such facilities shall be the sole responsibility of the property owner(s)."

trated the surface water into artificial drains or sewers, it turned same on plaintiff's property in such manner and such volume that the injuries complained of were likely to result, and did result, under and from the conditions presented." *Id.* *See also Eller v. City of Greensboro*, 190 N.C. 715, 720, 130 S.E. 851, 853 (1925) ("The city can only be liable for negligence in not exercising skill and caution in the construction of its artificial drains and watercourses. It is bound to exercise ordinary care and prudence. If [city streets] are so constructed as to collect and concentrate surface water that such an unnatural flow in manner, volume and mass is turned and diverted onto the lower lot, so as to cause substantial injury, the city is liable.").

Thus, in *Yowmans* and *Eller*, the Supreme Court recognized that a municipality has a duty to use due care when it makes improvements to its streets and when it directs water into storm drains. Both *Yowmans* and *Eller* impose liability based only on the municipality's own improvements causing additional runoff. Indeed, the Supreme Court in *Geo. A. Hormel & Co. v. City of Winston-Salem*, 263 N.C. 666, 675, 140 S.E.2d 362, 368 (1965), expressly limited *Yowmans* and *Eller* to allegations that *the City* "gather[ed] and concentrate[d] surface waters into artificial drains or sewers and turn[ed] them on a person's property in such manner and such volume" that injury occurred. Here, First Gaston has made no showing that the City has itself gathered and concentrated surface waters and sent them into the storm drain system in a volume that caused First Gaston's pipe to fail.

First Gaston has cited no authority that supports its contention that a City can be held liable for damage to a privately-constructed storm drain when its only involvement in creating the additional storm water volume was in approving private development that, when constructed, resulted in increased runoff. Its theory, if allowed, would appear to substantially negate the well-established law in North Carolina limiting municipal liability for failure of privately-constructed storm drains to specified circumstances. We believe that such a departure needs to come from the Supreme Court. *See Cootey v. Sun Inv., Inc.*, 68 Haw. 480, 486, 718 P.2d 1086, 1091 (1986) (holding with respect to claim against county based on increased runoff due to development: "The task of the government employees is to review the development plans submitted by the owner or developer to assess compliance with the law. While we do not condone negligence in the performance of this task, neither do we believe that the

government employees are required to conduct their own engineering studies to ensure the validity and correctness of the developer's plans. To require the County to do so would place the County as an insurer of the adequacy of Sun Investment's plans, designs and installation of subdivision facilities.").

B. Negligence Liability Based on Failure to Inspect and Maintain 7th Street Pipe

First Gaston next contends that the City's negligence in failing to inspect, maintain, and repair the downstream 7th Street pipe was a proximate cause of the First Gaston pipe's failure. The parties do not dispute that the City owned the 7th Street pipe and had a duty to maintain it, but do dispute whether there is sufficient evidence in the record to show that any breach of the City's duty to inspect, maintain, and repair the 7th Street pipe was the proximate cause of the First Gaston pipe's failure.

First Gaston's two expert witnesses specifically stated that they had not formed any opinion as to whether the 7th Street pipe caused or contributed to the failure of the First Gaston pipe. As its sole evidence on the issue of causation, First Gaston points to the testimony of Peter Verna and David Frailey (an employee of Verna and Associates, Inc.). First Gaston contends that "[b]oth Mr. Frailey and Mr. Verna believed that the design and maintenance of the pipe under 7th Street *may have contributed* to the problems upstream on the [First Gaston] property." (Emphasis added.) Even assuming *arguendo*, that "may have" evidence would be sufficient on summary judgment, we do not read the cited testimony as supporting a finding of causation.

The testimony of Mr. Frailey cited by First Gaston relates only to his opinion that (1) there was a poor connection between the pipe crossing the First Gaston property and the 7th Street pipe, and (2) there was debris in the 7th Street pipe. First Gaston points to no testimony by Mr. Frailey regarding whether the connection and the debris caused or contributed to the failure of the First Gaston pipe in 2005. Although Mr. Verna did address causation, he expressed only an opinion regarding whether the 7th Street pipe caused the 2002 collapse and not the 2005 collapse of the First Gaston pipe. Consequently, First Gaston has presented no evidence that the maintenance of the 7th Street pipe caused or contributed to the development of the sinkhole in 2005. The trial court did not, therefore, err in concluding that this evidence was insufficient to send the issue of negligence to the jury.

C. Liability Based on Negligence in Approval and Oversight of Repairs

Finally, First Gaston contends the City breached several duties in connection with its issuance of a building permit and oversight of the repairs on the property. According to First Gaston, the City breached its duty to enforce the Hickory Land Development Code by negligently issuing a building permit to the Verna defendants without requiring their compliance with that code.[4] First Gaston then asserts that, in addition, by issuing the building permit, the City assumed a duty to inspect the repairs made by the Verna defendants to the storm water pipe. According to First Gaston, once the City observed the repairs and knew or should have known they were inadequate or improperly done, the City had a duty to refrain from issuing a certificate of occupancy for the property and had a duty to warn First Gaston of the problems with the pipe.

The City responds initially that the public duty doctrine applies to shield the City from any liability in this instance. "Under the public duty doctrine, governmental entities have no duty to protect particular individuals from harm by third parties, thus no claim may be brought against them for negligence." *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 495 (2002).

This argument, however, is foreclosed by *Thompson v. Waters*, 351 N.C. 462, 526 S.E.2d 650 (2000), in which our Supreme Court declined to apply the public duty doctrine to a claim against Lee County for negligent inspection of a house. The Court held: "This Court has not . . . applied the public duty doctrine to a claim against a municipality or county in a situation involving any group or individual other than law enforcement. After careful review of appellate decisions on the public duty doctrine in this state and other jurisdictions, we conclude that the public duty doctrine does not bar this claim against Lee County for negligent inspection of plaintiffs' private residence." *Id.* at 465, 526 S.E.2d at 652. *See also Lovelace v. City of Shelby*, 351 N.C. 458, 461, 526 S.E.2d 652, 654 (2000) ("[W]e have never expanded the public duty doctrine to any local government agencies other than law enforcement departments when they are exercising their general duty to protect the public. We decline to

---

4. We note that Article 13 of the Land Development Code, which contains all of the sections cited by First Gaston, does not appear to apply to the repairs of the First Gaston pipe. That Article appears to come into play only for new construction or construction that will increase or alter the flow of storm water runoff. The pipe repairs in this case did not fall into either category.

expand the public duty doctrine in this case. Thus, the public duty doctrine, as it applies to local government, is limited to the facts of *Braswell* [*v. Braswell*, 330 N.C. 363, 410 S.E.2d 897 (1991),]" in which the Court addressed only "the issue of whether the sheriff negligently failed to protect the decedent." (internal citations omitted)). Since this case does not involve negligence by a local law enforcement department, the public duty doctrine does not apply.

Turning to the merits, even assuming, without deciding, that the duties First Gaston describes arose in this case, First Gaston still must show that the duty was owed to First Gaston. At the time of the repairs, SCA Morris owned the property. First Gaston was not the owner or occupant of the property until long after the repairs were completed.

First Gaston first cites *Watts v. N.C. Dep't of Env't & Natural Res.*, 182 N.C. App. 178, 641 S.E.2d 811 (2007), *aff'd in part*, 362 N.C. 497, 666 S.E.2d 752 (2008), as support for its argument that the City owed First Gaston a duty of care in its inspection and oversight of the repairs.[5] In *Watts*, 182 N.C. App. at 180, 641 S.E.2d at 815, the plaintiff brought a claim for negligent inspection after he purchased land in reliance on a certification by the County Health Department that it was suitable for a sewage system. The Court held the Department owed the plaintiff an individual, special duty of care because it "made a promise" that plaintiff could build a three-bedroom home on the property when it issued the permit. *Id.* at 184, 641 S.E.2d at 817. Thus, in *Watts*, the Court held the County owed a duty to *the owner of the property*, to whom it had certified the property as suitable. As First Gaston was not the owner when any permit was issued and has made no showing that any promise was made to it, *Watts* is inapplicable.

First Gaston also points to *Oates v. JAG, Inc.*, 314 N.C. 276, 277, 333 S.E.2d 222, 224 (1985), as support for its argument that the City owed the bank a duty even though First Gaston purchased the property more than a year after (1) the repairs were made and (2) the City allowed the restaurant on the property to reopen. In *Oates*, the defendant constructed a house on an unimproved lot of land and sold it. The person who bought it then sold the house and lot to a second purchaser. The plaintiffs bought the house and lot from the second purchaser. After moving into the house, they discovered numerous

---

5. First Gaston also cites *McCoy v. Coker*, 174 N.C. App. 311, 620 S.E.2d 691 (2005), *Wood*, and *Thompson* for this point. Although these cases deal with negligent inspection claims, they address the applicability of the public duty doctrine and other immunity issues not before us in this case.

defects, including a failure to conform with provisions of the North Carolina Uniform Residential Building Code. *Id.* The plaintiffs sued the defendant for negligence. The trial court allowed the defendant's motion to dismiss, and the plaintiffs appealed. *Id.* at 278, 333 S.E.2d at 224. On appeal, the Supreme Court held that "a subsequent purchaser can recover in negligence against the builder of the property if the subsequent purchaser can prove that he has been damaged as a proximate result of the builder's negligence." *Id.* at 281, 333 S.E.2d at 226.

First Gaston contends that under *Oates*, the City owed a duty to First Gaston as "the subsequent purchaser for value" of the property. In *Oates*, however, the Court held that a subsequent purchaser can recover from *the builder or owner of the property*. It did not address the question whether a subsequent purchaser could recover from someone other than the builder or owner of the property.

In *Everts v. Parkinson*, 147 N.C. App. 315, 318, 555 S.E.2d 667, 670 (2001), this Court declined to extend the *Oates* rule as broadly as First Gaston urges. In *Everts*, the plaintiffs purchased a house from the original owners and discovered water intrusion and wood rot problems requiring extensive repairs. They subsequently filed suit against the builders of the house ("ATD") and the company that performed improvement work on the house ("PSC"). *Id.*

With respect to ATD, the complaint alleged that the original owners of the house called the president of ATD and asked him to come to the house to look at a problem with some brick molding on a window and give them a price on replacing it. *Id.* at 333, 555 S.E.2d at 679. The president went to the house and examined the particular window, but was not asked and did not look at any other windows. Ultimately, ATD did not perform any of the repair work. The Court held these allegations failed to allege that the company had a duty of care to the plaintiffs and affirmed the grant of summary judgment in ATD's favor. *Id.*

The Court explained:

The law imposes upon the builder of a house the general duty of reasonable care in constructing the house to anyone who may foreseeably be endangered by the builder's negligence, including a subsequent owner who is not the original purchaser. *See Oates v. JAG, Inc.*, 314 N.C. 276, 280-81, 333 S.E.2d 222, 225-26 (1985). Pursuant to *Oates*, ATD, as the builder of the house, owed a general duty of reasonable care to plaintiffs *in its construction of*

*the house in 1988.* However, as noted above, plaintiffs on appeal argue only that ATD was willfully and wantonly negligent *in its inspection of the window, which occurred over three years after the house was constructed.* Thus, plaintiffs essentially request this Court to significantly extend the rule in *Oates* and hold that the builder of a house, who is called upon by the original owner to inspect the house for damage more than three years after the house is completed, and who performs no repair work on the house at that time, owes a legal duty of care to a subsequent owner *in its inspection of the house.* This we decline to do. Because plaintiffs are unable to establish the existence of a legal duty of care owed to plaintiffs by ATD under the circumstances, summary judgment was properly granted.

*Id.* at 333-34, 555 S.E.2d at 679.

The plaintiffs also alleged PSC negligently repaired the defects, failed to report the defects caused by stucco on the house, and failed to advise the original owners of the need for further inspection and testing to verify the nature and extent of the water intrusion damage to the home. *Id.* at 334, 555 S.E.2d at 679. This Court held that the repair company PSC also owed no duty of care to the plaintiffs, explaining:

We are unable to find, and plaintiffs have not directed our attention to, any cases holding that a party who undertakes to *repair* a house under contract with the original owner owes a duty of care to a subsequent purchaser of the house. As with plaintiffs' claim against ATD, such a holding would require us to extend the rule in *Oates*, in which case it was held that the law imposes upon the *builder* of a house the general duty of reasonable care in *constructing* the house to anyone who may foreseeably be endangered by the builder's negligence, including a subsequent owner. *See Oates*, 314 N.C. 276, 333 S.E.2d 222. We decline to so extend the rule in *Oates*. We believe PSC did not owe plaintiffs a duty of care recognized by law under the circumstances.

*Id.*, 555 S.E.2d at 679-80.

We believe *Everts* to be directly on point. In that case, the Court declined to extend a duty on the part of the original construction company or a subsequent repair company to a subsequent purchaser of the house. Similarly, here we decline to extend any duty owed by the City to the original owner as a result of inspections of the pipe to

someone who purchased the property more than a year later. *See also Lynn v. Overlook Dev.*, 328 N.C. 689, 696, 403 S.E.2d 469, 473 (1991) (holding that no duty to subsequent purchaser of property arose out of City's issuance of building permit to developer). Accordingly, since First Gaston has failed to demonstrate that the City owed First Gaston any duty, the trial court properly declined to allow First Gaston to proceed on this negligence theory.

### Conclusion

In sum, we conclude First Gaston has failed to present evidence of conduct constituting a taking sufficient to support a claim for inverse condemnation. Further, First Gaston has not demonstrated a genuine issue of material fact as to the existence of any duty on the part of the City to inspect, maintain, and repair the pipe or to warn First Gaston of the condition of the pipe crossing the property ultimately purchased by First Gaston. First Gaston has also failed to present evidence that any negligence in the maintenance of the 7th Street pipe caused First Gaston's injury. Because of our resolution of these issues, we do not address the issue of any contributory negligence on the part of First Gaston. We, therefore, affirm the trial court's grant of summary judgment to the City.

Affirmed.

Judges STEELMAN and STEPHENS concur.