IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-456

No. COA22-85

Filed 5 July 2022

Wake County, No. 20 CVS 13570

NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC.,
Plaintiff,

v.

CASSIE HERRING and CURTIS LEE TURMAN and RUTH HERRING, Defendants.

Appeal by Plaintiff from order entered 15 October 2021 by Judge G. Bryan
Collins in Wake County Superior Court. Heard in the Court of Appeals 7 June 2022.

*Haywood, Denny & Miller, L.L.P, by Robert E. Levin, for Plaintiff-Appellant.*

*Martin & Jones, PLLC, by Huntington M. Willis, for Defendant-Appellee.*

GRIFFIN, Judge.

Plaintiff North Carolina Farm Bureau Mutual Insurance Company, Inc.,
appeals from a summary judgment order finding Cassie Herring within the coverage
of an underinsured motorist ("UIM") insurance policy issued by Plaintiff. Plaintiff
asserts that the trial court erred in granting summary judgment because there is
insufficient evidence to establish that Defendant is a "resident" of the household
covered under the policy. We affirm the decision of the trial court and hold that there

is sufficient evidence to establish that Defendant is a resident of the household and is therefore covered under the UIM policy.

## I.    Factual and Procedural History

¶ 2        On 19 April 2019, Defendant was the front seat passenger in an automobile accident and was left injured by the crash.  Defendant sought recovery under a UIM policy that was issued to Defendant's mother and stepfather by Plaintiff.  Defendant's mother and stepfather are both named as insureds under the policy, while Defendant is named as a driver.

¶ 3        The policy issued by Plaintiff provides in part that Plaintiff "will pay compensatory damages which an Insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of . . . [b]odily injury sustained by an insured and caused by an accident."  The policy defines "insured" to include "[y]ou or any family member."  The term "family member" is defined by the policy as "a person related to you by blood, marriage, or adoption who is a resident of your household."  Nowhere in the policy is the term "resident" or "residence" defined.

¶ 4        Plaintiff conducted an examination of Defendant under oath on 23 November 2020. Defendant stated that she lives with her mother for four months each year and with her father for the remainder of the year, an arrangement that she has "always" maintained.  Defendant lists her father's address on her driver's license and vehicle

registration, and is registered to vote in the county where her father resides. Although Defendant stated that she does not receive mail at her mother's address, she did receive a $5,000 payment from Plaintiff for medical coverage under the same policy at that location.

¶ 5        On 2 December 2020, Plaintiff filed a complaint requesting declaratory relief to determine the rights of the parties under the UIM policy. Plaintiff asserts that Defendant is not a resident of her mother's home and is thus not covered under the policy. Plaintiff filed a motion for summary judgment on 25 August 2021, and Defendant filed her own motion for summary judgment on 31 August 2021.

¶ 6        In support of her motion for summary judgment, Defendant submitted affidavits from herself, her mother, her father, and her stepfather. These affidavits provide that Defendant maintains a permanent room in her mother's home and keeps personal belongings like toiletries and bedding there. They add that Defendant has been clinically diagnosed with severe depression and anxiety, conditions that she has suffered from for over twenty years, and, as a result, she has not maintained her own private residence in at least fifteen years. Contrary to Defendant's sworn statement, the affidavits claim that she does routinely receive and accept mail at her mother's residence. In addition, the affidavits submitted by Defendant's mother and stepfather indicate that it was their intent to include Defendant under the policy as a member of their household.

On 15 October 2021, the trial court filed an order granting Defendant's motion for summary judgment. Plaintiff timely filed notice of appeal.

## II. Analysis

The sole question for review is whether the trial court correctly granted summary judgment in favor of Defendant. Plaintiff maintains that Defendant is not covered under the UIM insurance policy because she is not a "resident" of her mother's household. Because there is sufficient evidence to establish that Defendant maintains residency in her mother's household, we affirm the trial court's decision.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). "A ruling on a motion for summary judgment must consider the evidence in the light most favorable to the non-movant, drawing all inferences in the non-movant's favor." *Morrell v. Hardin Creek, Inc.*, 371 N.C. 672, 680, 821 S.E.2d 360, 366 (2018). We review de novo an appeal of a summary judgment order. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

"The meaning of specific language used in an insurance policy is a question of law." *N.C. Farm Bureau Mut. Ins. Co. v. Briley*, 127 N.C. App. 442, 445, 491 S.E.2d

656, 658 (1997). "As with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued." *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978). "Insurance policies must be given a reasonable interpretation and where there is no ambiguity they are to be construed according to their terms." *Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 266 N.C. 430, 435, 146 S.E.2d 410, 414 (1966). However, "[w]here there is ambiguity and the policy provision is susceptible of two interpretations, of which one imposes liability upon the company and the other does not, the provision will be construed in favor of coverage and against the company." *Id.*

¶ 11        "The words 'resident,' 'residing' and 'residence' are in common usage and are found frequently in statutes, contracts and other documents of a legal or business nature. They have, however, no precise, technical and fixed meaning applicable to all cases." *Id.* The meaning of the word "resident" is thus "flexible, elastic, slippery, and somewhat ambiguous." *Great American Ins. Co. v. Allstate Ins. Co.*, 78 N.C. App. 653, 656, 338 S.E.2d 145, 147 (1986).

¶ 12        Our Supreme Court interpreted a similar insurance policy in *Jamestown*, noting that "[w]hen an insurance company, in drafting its policy of insurance, uses a 'slippery' word to mark out and designate those who are insured by the policy, it is not the function of the court to sprinkle sand upon the ice by strict construction of the term." *Jamestown*, 266 N.C. at 437, 146 S.E.2d at 416. Instead, "[a]ll who may, by

any reasonable construction of the word, be included within the coverage afforded by the policy should be given its protection." *Id*. at 437–38, 146 S.E.2d at 416.

¶ 13    "Determinations of whether a particular person is a resident of the household of a named insured are individualized and fact-specific." *N.C. Farm Bureau Mut. Ins. Co., Inc. v. Paschal*, 231 N.C. App. 558, 565, 752 S.E.2d. 775, 780 (2014). "[O]ne basic prerequisite exists when a party seeks coverage under this type of provision contained within a relative's insurance policy—namely, the party must show that they actually lived in the same dwelling as the insured relative for a meaningful period of time." *N.C. Farm Bureau Mut. Ins. Co., Inc., v. Martin*, 376 N.C. 280, 291, 851 S.E.2d 891, 898 (2020). However, residence in the insured's dwelling need not be exclusive to merit coverage, as "it is generally recognized that a person may be a resident of more than one household for insurance purposes." *Davis by Davis v. Md. Cas. Co.*, 76 N.C. App. 102, 106, 331 S.E.2d 744, 746 (1985).

¶ 14    Here, we evaluate whether Defendant is properly defined as a resident for the purposes of the UIM policy. We therefore examine the record to determine if, under any reasonable construction of the term, Defendant may be considered a "resident" of her mother's household. If so, our inquiry ends and Defendant should be afforded coverage under the policy. *See Jamestown*, 266 N.C. at 437–38, 146 S.E.2d at 416 ("All who may, by any reasonable construction of the word, be included within the coverage afforded by the policy should be given its protection.").

¶ 15        The record provides ample evidence that Defendant maintains residence in her mother's household. The sworn statement of the Defendant reveals that Defendant lives in her mother's home for "four months out of the year," an arrangement that she has "always" had. Defendant's residence in the home need not be continuous nor must it be without interruption. *See Davis,* 76 N.C. App at 106, 331 S.E.2d at 746. Thus, contrary to Plaintiff's assertion that this constitutes no more than family visits, the "basic prerequisite" that the insured must live in the dwelling for a "meaningful period of time" is surely met here. *See Newcomb v. Great Am. Ins. Co.*, 260 N.C. 402, 403, 133 S.E.2d 3, 5 (1963) (living in the home on and off for three years); *Jamestown*, 266 N.C. at 439, 146 S.E.2d at 417 (living in the home for periodic intervals over most of his adult life).

¶ 16        Defendant added that she retains a permanent room in her mother's home and keeps clothing that she shares with her mother. Affidavits submitted by Defendant's mother and stepfather explain that she keeps personal belongings at the mother's home, including items of daily living like toiletries and bedding. The affidavits show that Defendant is included as a named driver on the UIM policy and that her mother and stepfather intended she would be covered under their policy. Additionally, the trial court noted the irony of Plaintiff having previously sent a $5,000 check to the home.

¶ 17    Taken together, the evidence found in the record could establish at the very least that Defendant maintains a split residence between her father's home and her mother's home. Defendant need not be an exclusive resident of the mother's home in order to be covered under the UIM policy. Thus, the fact that Defendant lists her father's address on her driver's license and vehicle registration does not contravene the conclusion that she is a resident of the mother's home.

¶ 18    Plaintiff contests that some portions of the affidavits submitted by Defendant contradict prior sworn testimony and thus should not be considered by this Court. Plaintiff specifically points to testimony as to whether Defendant receives mail at her mother's address and to the extent of financial support provided by Defendant's mother. Even assuming arguendo that these sections of the affidavits are not to be considered, sufficient evidence to justify summary judgment has been provided by the sworn statement and the uncontested portions of the affidavits.

¶ 19    The material question of fact in this case is not whether the mother's home is Defendant's *primary* residence; rather, it is whether Defendant maintains *multiple* residences, a conclusion which is uncontroverted based upon the provided evidence.

### III.    Conclusion

¶ 20    For the reasons stated above, we affirm the decision of the trial court.

AFFIRMED.

Judge HAMPSON concurs.

Judge DILLON dissents.

DILLON, Judge, dissenting.

¶ 21    Defendants argued before the trial court and in their appellate brief that they are entitled to summary judgment for two separate reasons: (1) the evidence *conclusively* shows that Defendant Cassie Herring was a "resident" of her mother's "household" at the time of the accident and, alternatively, (2) Plaintiff waived its right or is otherwise judicially estopped from contesting Ms. Herring's residency. The trial court granted Defendants' summary judgment without articulating its reasoning.

¶ 22    The majority affirms the trial court on the first basis, that the evidence conclusively established that Ms. Herring was a resident of her mother's household at the time of the accident.

¶ 23    I conclude that the evidence, *when taken in the light most favorable to Defendants*, does show that Ms. Herring was a resident of her mother's household and, therefore, the trial court did not err in denying *Plaintiff* summary judgment. However, I conclude that there is a genuine issue of fact on this factual question. Further, I conclude that it would not be appropriate for us to affirm the trial court based on waiver or judicial estoppel. Therefore, I respectfully dissent.

**A. Insufficient Evidence to Establish Residency As a Matter of Law**

¶ 24    I conclude the evidence did not *conclusively* establish that Ms. Herring was a "resident of [her mother's] household" at the time of the 2019 accident. *See Newcomb v. Great Am. Ins. Co.*, 260 N.C. 402, 405, 133 S.E.2d 3, 6 (1963) (holding that whether

an injured party is a "resident" of an insured's household "is determinable on the basis on conditions existing at the time the casualty occurred").

¶ 25    Our Supreme Court recently grappled with this same "resident of your household" language in the context of a UIM policy. *N.C. Farm Bureau v. Martin*, 376 N.C. 280, 287, 851 S.E.2d 891, 896 (2020). The Court held that the terms "resident" and "household" – when not otherwise defined in the policy - should "be given the meaning which they have for laymen in such daily usage, rather than a restrictive meaning which they have acquired in legal usage." *Id.* (quoting *Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 266 N.C. 430, 438, 146 S.E.2d 410, 416 (1966)). Significant to this case, the Court quoted its holding in *Jamestown* explaining why the adult son in that case was a resident of his parents' home because:

> [He was] not in the same position as an adult child having a home of his own to which he returns to return and is making a mere visit to his parents. . . . He was there because he was a member of the family and had no other home.

*Id.* at 291, 851 S.E.2d at 898 (quoting *Jamestown*, 266 N.C. at 439, 146 S.E.2d at 417).

¶ 26    In any event, summary judgment is an especially high bar for Defendants in this case, as the burden rests on them—and not on the insurance company—to prove that Ms. Herring was a resident of her mother's household at the time of the accident. *N.C. Farm Bureau*, 376 N.C. at 285, 851 S.E.2d at 895 ("The party seeking coverage under an insurance policy bears the burden to allege and prove coverage.").

In *Kidd v. Early*, 289 N.C. 343, 222 S.E.2d 392 (1976), our Supreme Court grappled with the question concerning the appropriateness of granting summary judgment for the party with the burden of proof, given that the movant's credibility should generally be assessed by a jury. In resolving this question, the Court made the following holding:

> We hold that summary judgment may be granted for the party with the burden of proof on the basis of his own affidavits
>
> (1) when there are only latent doubts as to the affiant's credibility,
>
> (2) when the opposing party has failed to introduce any materials supporting his opposition [and] failed to point to specific areas of impeachment and contradiction, . . . and
>
> (3) when summary judgment is otherwise appropriate.

*Id.* at 370, 222 S.E.2d at 410. The Court emphasized, however, that:

> This is not a holding that the trial court is required to assign credibility to a party's affidavits merely because they are uncontradicted [by the non-movant]. To be entitled to summary judgment the movant must . . . show that there are no genuine issues of fact; that there are no gaps in his proof; that no inferences inconsistent with his recovery arise from his evidence; and that there is no standard that must be applied to the facts by the jury. Further, if the affidavits seem inherently incredible; if the circumstances themselves are suspect; or if the need for cross-examination appears, the court is free to deny the summary judgment motion.

*Id.* The Court then reminded that summary judgment should not be granted to the individuals with the burden on the strength of their own self-serving affidavits:

> Needless to say, the party with the burden of proof, who moves for summary judgment supported only by his own affidavits, will ordinarily not be able to meet these requirements and thus will not be entitled to summary judgment.

*Id.* at 370–71, 222 S.E.2d at 410.

¶ 28　　　　I conclude that summary judgment is inappropriate in this case for many reasons. First, Defendants relied primarily of their self-serving statements in their affidavits. As interested parties, their credibility is an issue for the jury. The only other evidence Defendants cite in support of the trial court's order is the fact that Ms. Herring received a single insurance benefit check sometime *after* the accident at her mother's address and a document showing that Ms. Herring's mother listed her as a resident on her insurance policy. *See Bruton*, 127 N.C. App. at 498-99, 490 S.E.2d at 601 (holding that the fact that an adult son is listed on his father's policy is not dispositive on whether the son is, indeed, a resident of his father's household).

¶ 29　　　　Second, there was other evidence before the trial court which, I believe, creates an issue of fact as to whether Ms. Herring was in fact a resident of her mother's household at the time of the accident. For instance, in a sworn statement, while stating that she stays with her mother a few nights each week, she identified "her current address" to be where her father lived in Wendell, without mentioning her

mother's address.[1]  When asked, "Where did you live before [Wendell]," she stated that she lived in Knightdale *with her father* for ten years, again without any reference to her mother's home as a place where she also was living.

¶ 30        Also, Ms. Herring admits she used her father's address for her driver's license, her voting registration, her bank statements, her car title, and for all her other mail, conceding that she did not receive mail at her mother's home.

¶ 31        When asked if she kept clothes at her mother's home, she responded, "[S]ometimes," stating that said clothes were those she shared with her mother.  She also stated that her father supported her financially.  She implied that her mother did not provide for her financially because her "mom is on disability."

¶ 32        And when asked what she did to keep herself busy just prior to the 2019 accident, she stated that she takes her dogs outside and that, "I either *go see my mom* or I'll paint and do artwork."  A jury could determine this statement that she goes to

---

[1] This referenced sworn statement is styled as "Examination Under Oath" taken before a notary public.  Though the statement *might not* technically a Rule 26 deposition, as the attorneys present had no right to cross-examine, or an affidavit, the statement was properly before the trial court as the statement would be admissible at trial as an admission of a party opponent.  *See Huss v. Huss*, 31 N.C. App. 463, 466, 230 S.E.2d 159, 161 (1976) (stating that "the court may consider "any other materials which would be admissible in evidence at trial").  And the fact that the attorneys present could not cross-examine is not relevant as affidavits (which may be considered at a summary judgment hearing) are also not subject to cross-examination.  *See First Gaston v. Hickory*, 203 N.C. App. 195, 199-200, 691 S.E.2d 715, 719-20 (2010) (deposition taken in prior case before different attorneys is functionally equivalent to an affidavit for purposes of a summary judgment hearing).

see her mom and her other statements referenced above are suggestive that she is part of her father's household and merely visits her mother.

¶ 33 Defendants do not cite a decision from our Supreme Court holding that an adult can be a resident of two separate households at the same time for insurance coverage purposes. They do cite a decision from our Court holding that a *minor child* of divorced parents can be. *See Davis v. Maryland Casualty*, 76 N.C. App. 102, 106, 331 S.E.2d 744, 747 (1985). But our Court has also held that an adult child was *not* a resident of his father's home where he "spent two to three weekends per month [and] stored some toiletries" at his father's home, where the evidence also showed that he "spent a majority of time" at his girlfriend's home and listed his girlfriend's home address as his address for his health insurance policy, his bank account, his utility bills, his taxes; and on the accident report. *Bruton v. N.C. Farm Bureau Mut. Ins. Co.*, 127 N.C. App. 496, 498, 490 S.E.2d 600, 602 (1997).

¶ 34 I conclude that there is an issue of fact concerning whether Ms. Herring was a resident of her mother's household at the time of the accident.

**B. Waiver/Judicial Estoppel**

¶ 35 Defendants argue that Plaintiff is judicially estopped to challenge whether Ms. Herring's residency under the policy. Specifically, they cite Plaintiff's admission in another action that Plaintiff "issued a policy of automobile insurance *available to [Ms. Herring]*." (Emphasis added.) However, this admission is not that Ms. Herring was covered as a resident of her mother's household *on the date of the accident*. Rather,

the admission was simply that the coverage was generally available to Ms. Herring, as she was listed by her mother on the policy, but coverage for an accident was subject to a showing that she qualified as a family member at the time the accident occurred.

¶ 36        But assuming Plaintiff's admission in the other action is somehow equivalent to an admission that Ms. Herring was a resident of her mother's household at the time of the accident, it would not be appropriate for us to affirm the trial court's grant of summary judgment on this basis.   First, the trial court did not exercise its discretion on whether to invoke judicial estoppel.  *Whitacre v. BioSignia*, 358 N.C. 1, 38, 591 S.E.2d 870, 894 (2004) ("We note that a trial court's application of judicial estoppel is reviewed for abuse of discretion.")  And second, it would have been an abuse of discretion for the trial court to grant summary judgment on the basis of judicial estoppel in this case based on the criteria set forth by our Supreme Court in *Whitacre*, 358 N.C. at 32-34, 591 S.E.2d at 890-92.

¶ 37        Regarding waiver, I conclude that there is at least an issue of fact as to whether Plaintiff waived contesting Ms. Herring's residency.  They had no reason to know that there was an issue concerning Ms. Herring's residency status until the statements Ms. Herring made under oath.